**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**ROBERT TREINEN, et al.,** :
:
**Plaintiffs,** :
: **Case No. 1:05-CV-448**
**v.** :
:
**VILLAGE OF GREENHILLS, et al.,** :
:
**Defendants.** :

**ORDER**

This matter is before the Court upon Defendant Anthony Patton's motion for judgment on the pleadings (Doc. 17), Plaintiffs' memorandum in opposition (Doc. 21), and Defendant Patton's reply memorandum (Doc. 26).

**I. Factual Allegations in the Complaint**

The factual allegations relevant to Plaintiffs' claims against Officer Patton are taken from the amended Complaint (Doc. 9) and set forth below.

On July 2, 2004, Robert Treinen and Benson Treinen were at the Pioneer Days Festival at the Greenhills Commons, an event sponsored by the Village of Greenhills. At approximately 11:30 P.M., Robert was standing by himself near some of the festival booths on the event grounds. He was observing the festival participants and events. He was not part of any crowd.

Robert then observed Officer Wes Burroughs pointing a pepperball launcher at him, so he displayed his hands to Burroughs to show that he was not armed. At that point, Robert had a beer in his left hand, and his right hand was open. Burroughs directed Robert to disperse. Robert asked why, to which Burroughs responded, "Leave or you will get shot with the pepper ball." Robert again asked why, and Burroughs shot Robert in the upper left thigh with a pepperball. Robert had not moved toward Burroughs nor engaged in any dangerous or violent conduct.

Robert asked Burroughs why he had shot him. Burroughs responded, "If you do not leave, you will get the pepperball again." Robert again asked Burroughs why he had shot him. Burroughs responded, "If you do not leave, you will be arrested." Benson Treinen, Robert's brother, then stepped between Burroughs and his brother, with his back to Burroughs. Robert said to Burroughs, "Don't shoot my brother in the back." Burroughs, without any warning, fired three shots from the pepperball launcher, striking Benson in the back with each shot. Robert repeated the statement to Burroughs, "Don't shoot my brother in the back." Burroughs responded, "Okay, you are under arrest."

Officer Patton then handcuffed Robert and escorted him through the festival crowd. Robert asked Patton why he was being arrested. Patton responded that he did not know. Patton asked Robert if he had any medical conditions. Patton requested identification from Robert, which Robert produced. Robert was then placed in a police cruiser and transported to the Village of Greenhills police station.

Robert was later charged with two minor misdemeanors, disorderly conduct and failure to disperse. Burroughs failed to appear for the trial, and the charges were dismissed.

**II. Procedural History**

On September 2, 2005, Robert and Benson Treinen ("Plaintiffs") filed an amended complaint against the Village of Greenhills and the following four individuals, all in both their individual and official capacities ("Defendants"): 1) David Moore, the municipal manager of the Village of Greenhills; 2) James Johnson, the Village of Greenhills' acting police chief; 3) Anthony Patton, a police officer employed by the Village of Greenhills; and 4) Wes Burroughs, a police officer employed by the Village of Greenhills.

Plaintiffs' claims against Defendant Patton are the only claims relevant to this motion. Plaintiffs assert federal and state claims. The federal claims, brought under 42 U.S.C. § 1983, are as follows: 1) Robert was unconstitutionally arrested, taken into custody, and detained by Patton, without probable cause, in violation of Robert's rights under the Fourth Amendment to the United States Constitution; and 2) Patton's actions constituted an arbitrary use of official power that shocks the conscience and violated Robert's rights under the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution. The state law claims are as follows: 1) false arrest; 2) false arrest in violation of article I, section 14 of the Ohio Constitution; 3) false arrest in violation of Ohio Revised Code § 2935.26; and 4) intentional infliction of emotional distress.

On September 26, 2005, Defendants filed an answer to Plaintiffs' amended complaint. On the same day, Defendant Patton filed a motion for judgment on the pleadings.

## **III. Opinion**

### **A. Applicable Standard**

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review applied to motions brought under Fed. R. Civ. P. 12(c) is "virtually identical to the standard employed for Rule 12(b)(6) motions." *Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 532 F. Supp. 480, 482 n.4 (S.D. Ohio 1982). For a Rule 12(c) motion, the Court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).

### **B. Analysis**

#### **1. Federal Claims**

Defendant Patton argues first that Plaintiffs failed to allege any facts that, if proven, would demonstrate that Patton violated Plaintiffs' federal constitutional rights. In the alternative, Patton argues that he is entitled to qualified immunity from Plaintiffs' federal claims.

##### **a. Fourth Amendment Claim**

###### **i. Did Plaintiffs Sufficiently Allege a Fourth Amendment Violation by Patton?**

Plaintiffs claim that Robert was unconstitutionally arrested, taken into custody, and detained by Patton, without probable cause, in violation of Robert's rights under the Fourth Amendment to the United States Constitution. In his motion for judgment on the pleadings,

Patton makes several alternative arguments that, accepting Plaintiffs' pleadings as true, Patton did not violate Robert's Fourth Amendment rights. First, Patton argues that Officer Burroughs arrested Robert; thus, his argument proceeds, Patton logically could not also have arrested Robert. Since Patton did not arrest Robert, Patton was not required to have probable cause to handcuff Robert and take him into custody. Second, Patton argues that even if probable cause was required for Patton to handcuff Robert and take him into custody, probable cause was established by the fact that Burroughs had already arrested Robert. Third, Patton argues that he had probable cause to arrest Robert.

The first two arguments are easily resolved. According to the statement of facts contained in Plaintiffs' complaint, which the Court must accept as true, Officer Burroughs told Robert that he was under arrest. (Am. Compl. ¶ 19.) Officer Patton then handcuffed Robert and took him into custody. (*Id.* at ¶ 20.) Plaintiffs then claim that "Burroughs and/or Patton arrested Robert Treinen unlawfully and without probable cause." (*Id.*) The complaint later states, "At the time Burroughs and Patton arrested Robert Treinen and took Robert Treinen into custody, it was a violation of clearly established Ohio law for the Defendants to make a physical arrest for the minor misdemeanors with which Robert Treinen was charged." (*Id.* at ¶ 23). From these alleged facts, it is impossible to determine if Patton, Burroughs, or both of them arrested Robert. Defendants cannot escape the allegations of Plaintiffs' pleadings by factually asserting that Burroughs alone arrested Robert. In other words, the Court must assume, for purposes of this motion, that Patton arrested Robert.

Assuming Officer Patton arrested Robert, the Court must determine whether he had probable cause for the arrest. It has long been true that the Fourth Amendment requires probable cause for an arrest. *Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir.2003). And it has long been true that this inquiry turns on whether the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979). Courts look at this question through the lens of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005) (citation omitted).

Patton contends that he had probable cause to arrest Robert for the crime of failing to disperse. The Ohio Revised Code provides the elements of the crime of failure to disperse:

> (A) Where five or more persons are participating in a course of disorderly conduct in violation of section 2917.11 of the Revised Code, and there are other persons in the vicinity whose presence creates the likelihood of physical harm to persons or property or of serious public inconvenience, annoyance, or alarm, a law enforcement officer or other public official may order the participants and such other persons to disperse. No person shall knowingly fail to obey such order.
>
> (B) Nothing in this section requires persons to disperse who are peaceably assembled for a lawful purpose.
>
> (C)(1) Whoever violates this section is guilty of failure to disperse.
> (2) Except as otherwise provided in division (C)(3) of this section, failure to disperse is a minor misdemeanor.
> (3) Failure to disperse is a misdemeanor of the fourth degree if the failure to obey the order described in division (A) of this section creates the likelihood of physical harm to persons or is committed at the scene of a fire, accident, disaster, riot, or emergency of any kind.

Ohio Rev. Code § 2917.04.

Plaintiffs claim that Patton did not have probable cause to arrest Robert for failure to disperse. They allege several facts in support of this argument in their complaint. They allege that at the time of the encounter with Officer Burroughs, Robert was standing by himself. (Am. Compl. ¶ 11). They further claim that Robert was not engaged in any activity other than peacefully observing festival participants and events, nor was he part of any crowd. (*Id.*). When he first observed Officer Burroughs pointing the pepperball launcher directly at him, Robert was standing by himself and doing nothing. (*Id.* at ¶12). At all times, Robert was peacefully assembled, and acting lawfully. (*Id.* at ¶15).

From these alleged facts, an inference can be drawn that Robert's presence at the festival did not create "the likelihood of physical harm to persons or property or of serious public inconvenience, annoyance, or alarm," as required by § 2917.04. If Robert's presence did not create such a likelihood of harm, then probable cause did not exist to arrest him for failure to disperse. Therefore, Plaintiffs have sufficiently alleged facts to support a claim that Officer Patton arrested Robert in violation of the Fourth Amendment.

**ii. Is Officer Patton Entitled to Qualified Immunity?**

However, the analysis does not end there, because Officer Patton argues that even if Plaintiffs properly allege that Patton violated Robert's Fourth Amendment rights, Patton is nevertheless entitled to qualified immunity from suit.

A defendant presenting a qualified immunity defense on a Rule 12(c) motion must accept the stringent standard applicable to this procedural route. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). As with all Rule 12(c) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only in support of his claims, but also to defeat the immunity defense. *Id.*

Qualified immunity shields public officials who perform discretionary functions from the necessity of defending against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). Whether qualified immunity applies turns on the “objective reasonableness” of the official's action. *Id.* The doctrine is designed to “avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.” *Id.* It protects “all but the plainly incompetent or those who knowingly violate the law.” *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986).

To analyze claims of qualified immunity the Court uses a two-part test: “(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established.” *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151 (2001)). The first prong of the test has been addressed above. Plaintiffs have properly alleged that Officer Patton arrested and detained Robert, without probable cause, in violation of Robert’s rights under the Fourth Amendment to the United States Constitution.

Thus, the question becomes whether the Fourth Amendment right allegedly violated by Officer Patton was clearly established. The Supreme Court has stated that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. at 2156. It is not necessary, however, for the exact factual situation to have previously been declared unlawful, so long as Officer Patton had "fair warning" that his conduct was unlawful. *Hope v. Pelzer,* 536 U.S. 730, 739-40, 122 S.Ct. 2508, 2515 (2002). Thus, qualified immunity will shield Officer Patton from suit if "a reasonable officer [in his situation] could have believed [Robert's arrest] to be lawful, in light of clearly established law and the information [Patton] possessed." *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987).

It is well-established law that an arrest without probable cause violates the Fourth Amendment. *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). If the Court assumes that Officer Patton arrested Robert without probable cause, as it must in the 12(c) context as explained above, then qualified immunity cannot shield Officer Patton from liability. Therefore, Officer Patton's motion for judgment on the pleadings is denied with respect to Plaintiffs' § 1983 claim that Robert was unconstitutionally arrested, taken into custody, and detained by Patton, without probable cause, in violation of Robert's rights under the Fourth Amendment to the United States Constitution.

**b. Substantive Due Process**

Plaintiffs contend that all Defendants, including Officer Patton, violated Plaintiffs' substantive due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution.

The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 812 (1994) (rejecting plaintiff's claim that an arrest without probable cause constituted a violation of plaintiff's substantive due process rights). As a general matter, the federal courts have "been reluctant to expand the concept of substantive due process because the guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Id.* at 271-72, 114 S.Ct. at 812.

Here, accepting the facts as Plaintiffs allege them, Officer Patton's conduct does not shock the conscience, nor does it fall into any of the categories typically protected by substantive due process. Furthermore, when a right is protected by a specific constitutional amendment, such as the right to be free from unreasonable seizures under the Fourth Amendment, as alleged in this case, the claim should be analyzed under that specific constitutional provision and its applicable standard, not under the rubric of substantive due process. *See Graham v. Connor,* 490 U.S. 386, 393-95, 109 S.Ct. 1865, 1870-71 (1989). Therefore, Officer Patton's motion for judgment on the pleadings is granted with respect to Plaintiffs' substantive due process claim, and Plaintiffs' § 1983 substantive due process claim against Officer Patton is dismissed.

**2. State Law Claims**

Plaintiffs also present several state law claims against Officer Patton, as follows: 1) false arrest; 2) false arrest in violation of article I, section 14 of the Ohio Constitution; 3) false arrest in violation of Ohio Revised Code § 2935.26; and 4) intentional infliction of emotional distress.

**a. False Arrest**

The essence of the tort of false arrest is the depriving of a person of his or her liberty without lawful justification. *Harvey v. Horn*, 33 Ohio App.3d 24, 27, 514 N.E.2d 452, 454 (1986). "Specifically, a plaintiff must show only that he or she was detained and that the detention was unlawful." *Id*. The guidelines for determining whether a detention is lawful under Ohio law come from Fourth Amendment jurisprudence. *Id.* at 28, 514 N.E.2d at 455. Therefore, absent any additional defenses under state law, Plaintiffs' state law claims against Officer Patton for false arrest should not be dismissed for the reasons provided under Plaintiffs' Fourth Amendment claims.

Officer Patton argues that he is entitled to immunity from Plaintiffs' false arrest claims under Ohio Revised Code 2744.03(A)(6). That section provides:

> (A) In a civil action brought against . . . an employee of a political subdivision to recover damages for injury . . . or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function . . . (6) . . . the employee is immune from liability unless one of the following applies:
>
> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code . . .

Plaintiffs allege that Officer Patton is not entitled to immunity under Ohio law because he acted with malicious purpose, in bad faith, or in a wanton or reckless manner. "Malice" is "the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook v. City of Cincinnati,* 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 821 (1995). Bad faith is defined as involving "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id.* Finally, an individual acts in a "reckless" or "willful and wanton" manner if he or she commits an act or intentionally fails to act when he or she has the duty to the other to do so, knowing or having reason to know of facts which would lead a reasonable person to realize not only that his or her conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his or her conduct negligent. *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705, 708 (1990) (citing the Restatement of Torts 2d).

Officer Patton contends that Plaintiffs have not presented sufficient factual allegations to overcome Ohio's statutory presumption of Officer Patton's immunity. However, Plaintiffs' factual allegations, construed in favor of the Plaintiffs, are sufficient to support an inference that Officer Patton may have acted recklessly at the time he arrested Robert. If Plaintiffs can show that Officer Patton had no probable cause to arrest Robert, then a jury might conclude that Officer Patton also knew or should have known that he had no probable cause to arrest Robert. Therefore, Officer Patton's motion for judgment on the pleadings is denied with respect to Plaintiffs' false arrest claims under Ohio law.

**b. Intentional Infliction of Emotional Distress**

Plaintiffs claim that Officer Patton, by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to Robert Treinen. Plaintiffs claim that Officer Patton's actions were with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiffs further claim that Officer Patton's actions were so extreme and outrageous that they went beyond all bounds of decency.

Under Ohio law, one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666, 671 (1983). In order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious. *Id.* "[S]erious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (1983). In defining the type of conduct that rises to the extreme and outrageous standard, Ohio courts have relied upon the following standard expressed in the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153, 462 N.E.2d 392, 394 (1984). The Sixth Circuit has recognized that it is extremely difficult for a plaintiff to satisfy this standard, and has stated that , "[i]t is well accepted that intentional infliction of emotional distress claims may

entirely appropriately be dealt with . . . on a motion to dismiss." *Miller v. Currie*, 50 F.3d 373, 377-78 (6th Cir. 1995). *See also Rogers v. Targot Telemarketing Servs.*, 70 Ohio App.3d 689, 591 N.E.2d 1332, 1333, 1336 (1990).

In this case, Plaintiffs' allegations with respect to Officer Patton simply fail to rise to the level of extreme and outrageous conduct required to state a claim for intentional infliction of emotional distress. Officer Patton's involvement in the altercation was peripheral to Officer Burroughs' involvement. At most, Officer Patton acted wrongfully by arresting Robert without probable cause. In addition, Officer Patton inquired about Robert's medical condition, presumably to ensure that Robert could be given proper medical care if needed. Accordingly, the Court grants Officer Patton's motion for judgment on the pleadings with respect to Plaintiffs' intentional infliction of emotional distress claim.

**3. Official Capacity Claim**

Officer Patton argues that Plaintiffs' claims against him in his official capacity should be dismissed as redundant.

Official capacity suits are generally a way to plead an action against the organization which employs the official. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105 (1985). Since *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018 (1978), however, local government units can be sued directly; there is no need to bring an official capacity action. As long as the government entity has notice and an opportunity to respond, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. Thus, district courts have dismissed official capacity claims against individuals as redundant or unnecessary where identical claims are

asserted against the entity employing the individual. *See Union Pacific R.R. v. Village of S. Barrington,* 958 F. Supp. 1285, 1291 (N.D. Ill.1997); *Booker v. Board of Educ., Baldwinsville Cent. Sch. Dist.,* 238 F. Supp.2d 469, 475 (N.D.N.Y. 2002); *Kohn v. Mucia,* 776 F. Supp. 348, 356 (N.D. Ill. 1991).

In this case, Plaintiffs bring official capacity claims against Officer Patton as well as claims against the Village of Greenhills. It is not clear from the pleadings whether Plaintiffs have asserted identical claims against Officer Patton in his official capacity and the Village of Greenhills. If the claims are identical, then they either will be dismissed at a later date or moot because they are redundant. However, the Court will not dismiss them at this stage in the proceedings.

IT THEREFORE IS ORDERED that Defendant Patton's motion for judgment on the pleadings is GRANTED in part and DENIED in part. Accordingly, the Court DIRECTS that Plaintiffs' Second Cause of Action, for substantive due process violations, and Ninth Cause of Action, for intentional infliction of emotional distress, hereby are DISMISSED with prejudice with respect to Defendant Patton. This matter hereafter shall proceed in accordance with the schedule set by this Court as to Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court